574 So.2d 1111 (1990)
LINCOLN OLDSMOBILE, INC., f/k/a Bob Lincoln, Inc. d/b/a Bob Lincoln Oldsmobile, Inc., a Florida Corporation, Appellant,
v.
William O. BRANCH and Roger H. Dean, Appellees.
Nos. 89-02706, 90-00420.
District Court of Appeal of Florida, Second District.
December 21, 1990.
*1112 Tom Shipp and Diane E. McGill, of Turk & Shipp, Cape Coral, for appellant.
Susan E. Trench of Goldstein & Tanen, Miami, for appellees.
PATTERSON, Judge.
This landlord-tenant action arose when, at the end of its lease, Lincoln Oldsmobile, Inc. failed to vacate property owned by appellees William O. Branch and Roger H. Dean. The appellees filed suit and recovered both double rent and special damages for the time between the end of Lincoln's lease and the date it vacated the property, i.e., the holdover period. Lincoln's appeal presents two questions for our review: first, whether a landlord may recover double rent for a holdover period preceding the demand for double rent; and second, whether a trial court may award a corporation's damages directly to its principal stockholder. We answer both questions in the negative and reverse.

Facts
On May 1, 1981, Bob Lincoln, Inc., d/b/a Bob Lincoln Oldsmobile (Lincoln), leased commercial property from the estate of William R. Frizzell and opened an automobile dealership on the property. In 1985, Lincoln informed the Frizzell Trust that it was building a new dealership at a different location and would not renew the lease.
The trust offered the property for sale and, on December 20, 1985, sold it to appellees Branch and Dean as partners. The appellees intended to operate Budget Car Sales, a division of B & D Transportation Services, Inc. (B & D), on the property. In furtherance of this plan they leased the property to B & D at a monthly rental of $10,000.00. This lease began in January 1986, four months before the Lincoln lease expired. The record does not disclose why Branch and Dean created this overlapping lease arrangement.
At about the same time, Lincoln approached Branch and requested to hold over beyond the April 30, 1986, expiration of its lease because of delays in the construction of its new facility. Branch refused and demanded a $2,000.00 per day rental for any holdover period. By letter dated March 31, 1986, Lincoln renewed its request and offered to pay double rent for the holdover period. By letter dated April 2, 1986, Branch rejected Lincoln's offer and again demanded holdover rent of $2,000.00 per day.[1] Lincoln made a business decision to hold over until its new facility was completed, *1113 and on May 1, 1986, tendered a check for the regular monthly rental of $3,491.23.
Branch and Dean refused the tender and, on the same day (May 1, 1986), filed a tenant eviction proceeding under section 83.20, Florida Statutes (1985), in the County Court for Lee County. Lincoln answered, counterclaimed for declaratory relief, and moved to transfer the action to the circuit court. After a number of legal skirmishes, the county court entered an order of transfer on May 13, 1986.
On June 9, 1986, Lincoln vacated the property. Two weeks later, on June 24, 1986, Branch and Dean filed in the circuit court a two-count amended complaint abandoning their demand for eviction and, for the first time, seeking double rent and damages for loss of use of the property. After a non-jury trial, the lower court awarded $13,964.92 in double rent to Branch and Dean, and $36,759.00 to Branch individually as "special damages" for loss of the property's use.[2]

Recovery of Double Rent
When a tenant holds over beyond the term of his tenancy, the landlord has among his possible remedies the options of: (1) demanding double rent; (2) demanding a specific amount of continuing rent; or (3) suing for the possession of the property plus damages, including special damages for loss of the property's use. David Properties, Inc. v. Selk, 151 So.2d 334 (Fla. 1st DCA 1963). We hold that these remedies are mutually exclusive in that a claim for double rent or a specific amount of continuing rent implies that the landlord acquiesces to the continuing tenancy at a rental the landlord determines to be fair.[3] A claim for special damages, on the other hand, implies the opposite, i.e., that the landlord objects to the continuing tenancy and suffers damage from loss of immediate possession of the property. Thus, the landlord must decide whether to treat the holdover as a tenant or a trespasser. See Annotation, Measure of Damages for Tenant's Failure to Surrender Possession of Rented Premises, 32 A.L.R.2d 582 at 585 (1953).
Here, Branch and Dean first elected to sue for possession only and did not seek special damages. When Lincoln voluntarily vacated the property on June 9, 1986, they shifted the thrust of their attack to a claim for double rent and special damages. The double rent question this case presents is whether a holdover tenant's obligation to pay double rent accrues as of the date of the demand, or whether the obligation is retroactive to the date the holdover began. We hold that the obligation to pay double rent begins on the date of the demand, and is not retroactive.
Our determination is grounded upon the fact that the statutory provision for double rent is not automatic, but rather is a penalty. Painter v. Town of Groveland, 79 So.2d 765 (Fla. 1955). The landlord may invoke this penalty or not, at his option. When the landlord chooses to demand double rent, the tenant's continued holdover constitutes an implied agreement to pay the rent demanded. David Properties, 151 So.2d at 338. Absent such a demand, or other affirmative action on the part of the landlord, the tenant becomes a tenant at sufferance at the original rent. See § 83.04, Fla. Stat. (1985).
Here, no demand for double rent was made during Lincoln's holdover tenancy. Therefore, the award of double rent was erroneous and is reversed.

Award of Special Damages to Branch
It is difficult for us to discern the precise legal theory upon which the lower *1114 court awarded damages to Branch individually. A claim for special damages is not properly joined with an action for double rent, and the pleadings do not support an individual award to Branch on any other theory.
The underlying claim is that B & D, a corporation of which Branch is the principal stockholder, was entitled to possess the premises and suffered economic losses because it could not operate during Lincoln's holdover tenancy. Branch's counsel explained to the trial court why these losses were to be imputed directly to Branch, rather than to the corporation, as follows:
So when all of the business is done and all the salaries are paid and Mr. Simon, the general manager, his salary is paid and all of the salespeople are paid, Mr. Branch then has the right to go into the till, if you will, Your Honor, and take out the daily profits, because they are his and those are the monies he lost.
We have no reason to doubt that the business affairs of B & D are conducted in the manner described. However, such departures from acceptable operations of a separate corporate entity hardly provide the foundation for a legal claim on the part of Branch.
The injury here is to the corporation and not to Branch. In such cases, a stockholder cannot maintain an action in his own name but must bring it in the name of the corporation. This is true even where the individual is the sole stockholder of the corporation. Schaffer v. Universal Rundle Corp., 397 F.2d 893 (5th Cir.1968); see Gutierrez v. Shaffer, 490 So.2d 1299 (Fla. 3d DCA 1986).
The individual award to Branch is reversed.

Attorney's Fees
In the final phase of this litigation, the lower court awarded Branch and Dean attorney's fees of $35,750.00 and costs of $757.40. Based upon our foregoing holdings, each of these awards is vacated. On remand, the lower court is directed to enter judgment in favor of Branch and Dean in an amount representing forty days of holdover tenancy based upon a monthly rental of $3,491.23 per month, together with costs.
In regard to attorney's fees, the lower court should first consider our holdings herein in determining whether Branch and Dean are entitled to fees. Any fee award should represent only the time and effort necessary to achieve the result mandated by this opinion. In so doing, the lower court must conform strictly to the requirements of Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), and Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).
Reversed and remanded.
PARKER, A.C.J., and ALTENBERND, J., concur.
NOTES
[1] Branch's counsel conceded that the $2,000.00 per day demand was either withdrawn or abandoned.
[2] The amended complaint demands damages for "the plaintiffs" but asserts no separate claim for Branch individually.
[3] In David Properties, the First District discussed the three options, and said:

The defendant [landlord] also could waive the wrong occasioned by the holding over and treat the plaintiff as a tenant, demanding an increased rent of the plaintiff if the plaintiff chose to remain on the property... .
151 So.2d at 340. Thus, in demanding additional rent, the landlord acquiesces to the tenant's continued occupancy.