RAMIREZ, J.
GFN Corporation, a Delaware corporation, appeals the entry of a final judgment in favor of the defendants below, KPMG Peat Marwick and its partners, in an action for negligence in accounting, auditing, and actuarial services. Because the record is devoid of evidence to support GFN’s claim for damages, we affirm.
GFN is a wholly-owned subsidiary of GFN Ltd. (LTD). The Insurance Company of Florida (ICF) is a defunct wholly-owned subsidiary of GFN. KPMG provided annual accounting, auditing, and actuarial services to GFN and its subsidiaries from 1984 through 1992. In February 1990, KPMG first reported a potential $1.5 million loss for ICF in 1989. In February 1991, KPMG reported that ICF’s financial reserves were adequate. In 1992, KPMG reported a $2.5 million loss reserve deficiency for ICF in 1987 and 1988.
In its Second Amended Complaint, GFN claimed a loss in excess of $31 million, including: (1) the loss of its $9 million initial investment in ICF; (2) the loss of $22 million in loans obtained by or on behalf of ICF, plus interest; (3) unspecified lost profits of ICF; and (4) unspecified lost profits from alternative ventures. GFN alleged that KPMG’s reports induced GFN to infuse capital into ICF and/or guarantee loans for ICF at a subsequent loss to GFN in excess of $23 million.
GFN first calculated its damages based upon a “surplus roll forward” model. GFN then substituted this model with a new damage model in which damages were calculated based upon capital contributions and loans GFN made to ICF. During discovery, GFN first stated that there were no documents relating to loans GFN made to ICF. GFN subsequently produced thirty-eight documents and a general ledger as evidence of those loans. Nineteen of these loan documents reflected loan agreements between GFN Capital Corporation and LTD. The other nineteen loan documents reflected loan agreements between LTD and GFN. GFN later admitted that the original loan documents could not be located and the loan documents produced had been recently created and backdated. The general ledger also contained altered notations.
The trial court struck the part of GFN’s claim against KPMG which relied on the backdated loan documents and the ledger with the altered notations. The trial court also entered summary judgment in KPMG’s favor on GFN’s remaining claims because GFN lacked standing to pursue damages that were indirect to GFN.
GFN complains that the trial court improperly struck the loan documents, as well as the claim reflected on those documents. We find, that the trial court correctly struck the documents. GFN attempted to fabricate nonexistent documents to prove a disputed event — that GFN infused money into ICF. There is ample support for the trial court’s finding that the creation of these documents, and their production during discovery as if they were originals, constituted wilful and deliberate misconduct on the part of GFN. Notwithstanding 'GFN’s misconduct, GFN has to date failed to produce *946 any documentary evidence to substantiate its claim of cash infusions into ICF.
We also find that the trial court properly entered partial final judgment in KPMG’s favor. The trial court’s thirteen-page order is eminently well-reasoned and unassailable. In this case, GFN must prove that it made capital contributions or loans to ICF to recover damages for the alleged negligence of KPMG. A plaintiff must prove the existence of each of the elements of the tort alleged or the case will fail at the outset. See Cato v. West Florida Hosp., Inc., 471 So.2d 598, 600 (Fla. 1st DCA 1985). In Cato, the plaintiff did not prevail where no damages existed because “[wjithout the presence of any one of the elements, the entire cause of action fails”. Id. The record before this Court is devoid of evidence that GFN directly made any capital contributions or loans to ICF. The loan documents instead reflect transactions that occurred between GFN’s affiliated corporations, GFN Capital Corporation and LTD. GFN’s negligence action, therefore, lacks at its inception the required element of damages.
GFN also complains that the trial court improperly dismissed its damage claims for lack of standing, see Harrington v. Batchelor, 781 So.2d 1138 (Fla. 3d DCA 2001), because their injuries resulted from KPMG’s breach of a contractual duty which KPMG owed GFN under their agreement. In Harrington, a shareholder was entitled to file an individual action to recover for injuries that stemmed from a breach of a contractual duty the wrongdoer directly owed the shareholder. The same circumstances, however, are not present here. In this case, GFN sued KPMG solely for negligence based upon an alleged breach of duty that KPMG owed ICF which resulted in a diminution of value of GFN’s investment in ICF. GFN has not sued KPMG for breach of any contractual duty KPMG owed GFN. We also cannot ignore the potential risk of double recovery if GFN recovers for the same injuries for which ICF, acting on GFN’s behalf through its appointed receiver, can recover. See Horvath v. General Motors Corp., 636 So.2d 771, 773 (Fla. 3d DCA 1994). There is no evidence that the statute of limitations on all of ICF’s potential claims has expired or that ICF’s rights of action have otherwise been foreclosed.
For these reasons, GFN cannot claim damages for the loss of any multi-million dollar investment in a moribund enterprise.
Affirmed.